## STATE EX REL. JOHN L. SAMMONS v. L. S. NELSON.[1]

### October 27, 1916.

### Nos. 19,998—(16).

**Judicial ditch — review of proceedings by certiorari.**

1. The relator in *certiorari* to review proceedings to establish a judicial ditch is the owner of land assessed for the ditch, and a resident taxpayer in a village which was assessed for connecting the village drainage system with the proposed ditch. The village was a party to the proceedings below, but does not seek to have them reviewed here. Relator suffers no damage by the connection, nor is his assessment affected. It is *held* that relator cannot have reviewed on *certiorari* that part of the judgment authorizing such connection or assessing the village therefor.

**Judicial ditch — formal judgment — posting notice.**

2. There were no defects or errors in the proceedings below that rendered the judgment void, or affected relator in his capacity as owner of lands assessed.

Upon the relation of John L. Sammons this court granted its writ of *certiorari* to review the order of Nelson, J., as judge of the Thirteenth judicial district, in proceedings to establish Judicial Ditch No. 18 in Cottonwood county. Affirmed.

*Haycraft & Palmer,* for relator.
*Wilson Borst,* for defendant.

[1]Reported in 159 N. W. 758, 161 N. W. 576.

BUNN, J.

*Certiorari* to review proceedings to establish a judicial ditch in Murray and Cottonwood counties. The relator is the owner of a tract of 61 acres that was assessed for the ditch. He is also a resident and taxpayer in the village of Westbrook, Cottonwood county. In the proceedings below relator appeared in his own behalf and also as attorney for other property owners and for the village. Neither the village nor any of the other owners of property assessed for the ditch seek to have the proceedings reviewed in this court. While the relator states in his petition for the writ that he represents, and makes the petition on behalf of other landowners, their names are not given, and we find nothing in the record that warrants holding that any such other landowners are here complaining of the judgment below. Nor is the village a party to the case in this court. It was a party below, but appears to have been satisfied with the result.

The proceedings were begun in March, 1915, under Laws 1905, p. 303, c. 230, and amendatory acts, by a sufficient petition duly filed. After a preliminary hearing, an engineer was appointed to make a survey of the ditch, estimate the cost thereof and perform the other duties required of him by the law. He subsequently made and filed his report, and the court appointed viewers to estimate and report the benefits and damages. The viewers filed their report, and the matter came on for final hearing in December, 1915. On the evidence taken, the court, in March, 1916, made and filed its final order, which is one purporting to establish the proposed ditch, and to levy assessments for benefits upon the lands described in the order. The ditch and branches were to be constructed wholly of tile laid under ground, except that a small portion of the main ditch and of one branch was to be open ditch. The project is a large one and it is not questioned that it is necessary in order to drain the low, marshy lands in the easterly portion of Murray county and the western part of Cottonwood county. Among the many branch ditches, the ones with which we are concerned here are called Branch L and Branch L-1. Branch L was to run in an easterly and westerly direction through the corporate limits of the village of Westbrook, but south of the platted portion thereof, through agricultural land, a part of which is the tract owned by relator, as before mentioned. Branch

L-1 ran north of Branch L and into the platted portion of the village. There was a system of tiling in the village laid partly in the streets and largely across the property of its residents, used to carry off water from the cellars as well as sewage. This was deposited on low land south of the village and allowed to find its way into the ground. The village authorities regarded this system as insufficient, and contemplated a new system of drainage for the village and its inhabitants. They desired to connect this system with the proposed judicial ditch, planning to assess the owners of lots in the village for the cost. By its judgment the court, in addition to assessing the village for benefits to its streets and highways, assessed it $3,000 for the improvement of three outlets from its tiling system into Branch L-1 of the judicial ditch, and provided that the village be permitted to connect its sewerage system with Branch L-1, at such points as the village authorities might determine, but "on condition that the village first install a septic tank as required and approved by the state board of health, through which septic tank [it] must run such sewage before it is discharged in said drainage system."

The contention most relied on by counsel for relator is the illegality of thus authorizing a discharge of the village sewage into the proposed ditch, and assessing the village for the necessary connections. As we have said, the village appears to be satisfied with this judgment and with the assessment mentioned. It does not appear that relator can suffer any damage from this provision of the judgment. It does not affect the amount of the assessment on his land, nor can his land be assessed by the village to pay any proportion of the assessment for the connections mentioned, as it cannot be served by the village tiling system or receive any benefit therefrom. Nor does it appear that the proposed discharge from the village system will overtax the judicial ditch, or be any menace to the public health. Without expressing any opinion as to whether this part of the judgment could stand against an attack by the village, or by a property owner whose rights were directly affected, we reach the conclusion that relator cannot question on this hearing either the legality of the connection, or the assessment against the village. The village has taken no steps to review the judgment, nor have any property owners other than relator. It is clear that a resident and taxpayer of a village cannot bring *certiorari* to review a judgment against

the village unless he is interested in some more direct way. State v. Village of Lamberton, 37 Minn. 362, 34 N. W. 336, and cases cited. 2 Notes on Minn. Reports, p. 1106. It follows that relator can have reviewed under the writ in this case only questions that go to the validity of the proceedings as a whole, or that affect the relator in his individual capacity as owner of land assessed for the ditch. This is in accord with the provisions of G. S. 1913, § 5576, which are that: "No person or corporation shall be permitted to take advantage of any error committed in any proceedings under this chapter, * * * nor of any informality, error or defect appearing in the record of such proceedings, unless the party complaining thereof is directly affected thereby. If the court shall at any time modify any assessment or assessments or enjoin the collection thereof, or release any person from liability thereof, it shall in no manner affect the rights or liability of any other person."

We take up the various claims of defects in the proceedings of which the relator complains.

It is urged that the judgment does not establish the ditch. It is true that there is no language saying expressly that the ditch is "established," but, taking the judgment as a whole, it is plain enough that it is one establishing the ditch as described in the engineer's report, which is full and clear, and is expressly confirmed by the judgment. We hold against relator on this point.

There is no merit in the point that notices were not posted in the village of Westbrook. They were posted in the township in which the village lies, and and this was a compliance with the law. The points as to insufficiency in amount of the bond, and that the engineer's report was made by an assistant, instead of by the engineer himself, are obviously not well taken. There are several claims of errors in the judgment, such as omitting therefrom a school farm and creamery lot, cutting down the amount of the assessment on a certain lot, lumping the assessments on several contiguous lots, changing the route of a branch so as to take the tile from along relator's land to a different tract. Our examination of the evidence discloses no reason why we should interfere with the conclusions of the trial court on any of these details.

A meandered lake, known as "Mud Lake," containing about 180 acres of land, will be drained by the system established. The court finds that

this lake has become normally shallow, of a marshy character, and no longer of sufficient depth or volume to be of any substantial use or benefit. Relator contends that there is no evidence to support this finding. We think that there is, though it is not as clear and explicit as it might be. But relator is in no condition to complain of this finding. It does not appear that the drainage of this lake in any way affected his land or the assessment levied thereon. Plainly an error here would not vitiate the entire proceedings, and no one is objecting who has any direct interest.

Our conclusion on the whole case is that no valid ground is shown for disturbing the judgment below. If relator is justly aggrieved by the amount of his assessment, his remedy is in the jury trial which he has demanded.

Judgment affirmed.

HALLAM, J. (dissenting).

In my opinion relator has such interest in the assessment of $3,000 against the village of Westbrook as to warrant his securing a review of such assessment on *certiorari*. He is a resident and taxpayer of the village. This is sufficient interest to give him a right to have reviewed any order or judgment for an assessment, the direct consequence of which must be to add to the burden of local taxation. Maxwell v. Board of Supervisors of Stanislaus County, 53 Cal. 389; Orr v. State Board of Equalization, 3 Idaho, 190, 28 Pac. 416; Moore v. City Council of City of Perry, 119 Iowa, 423, 93 N. W. 510; Biddle v. Borough of Riverton, 58 N. J. Law, 289, 33 Atl. 297; People v. Board of Supervisors of County of Westchester, 57 Barb, 377; see Champion v. Board Co. Commrs. of Minnehaha County, 5 Dak. 416, 428, 41 N. W. 739.

This is in accord with the rule applied in this state in injunction cases. It was said in Hodgman v. Chicago & St. P. Ry. Co. 20 Minn. 36 (48), of a plaintiff taxpayer who sought to restrain an issue of city bonds, that "the damages which he will sustain in case his burdens of taxation are thus increased, are not in common with the damages to other taxpayers, but they are special, affecting his private property and private rights."

State v. Village of Lamberton, 37 Minn. 362, 34 N. W. 336, was a

different case. The acts sought to be there reviewed were official acts of public officers, not in any manner peculiarly affecting the relator. No matters of taxation were involved. It was held that a resident and taxpayer cannot have *certiorari* in such a case. The distinction between that class of cases and this is recognized, and is pointed out in Maxwell v. Board of Supervisors of Stanislaus County, 53 Cal. 389.

I am also of the opinion that the assessment of $3,000 was unauthorized, and that the drainage laws of the state do not authorize the drainage of a sewer system of a village.

On January 12, 1917, the court ordered a reargument upon the following points only:

(1) Can the land of relator within the corporate limits of the village of Westbrook be assessed or taxed to pay any part of the assessment against the village for connecting its sewage system with the judicial ditch?

(2) Is this assessment against the village valid?

On March 9, 1917, the following opinion was filed:

PER CURIAM.

The reargument in this case satisfies us that the result reached in the former decision was right, though we may have been mistaken in assuming that the village of Westbrook was assessed $3,000 for making the necessary connections for the discharge of the village sewage into the proposed ditch.

The assessments were for "improvement of main outlet for village at Villa street and Wells avenue, $2,500.00;" and for "improvement of two outlets for drainage east of depot and south of railway $500.00." It is vigorously insisted by counsel for respondent that the system of tiling in the village was not a sewer system, but a drainage system, and that the assessments were not made against the village for the privilege of discharging its sewage into the ditch. If this is correct the village was not assessed for permitting it to connect the outlet of the village sewerage system with Branch L-1, on condition that a septic tank be first installed, as the judgment does not provide that the village was to pay anything for this right. There can be no doubt of the legality of assessing the village for the improvement of outlets so that water from its streets

136 M.—19

and from private property within its limits would drain into the proposed ditch. If the assessments were made for this only, it is entirely clear that relator, as a taxpayer or owner of land within the village limits, has no just grievance. If it should appear in subsequent proceedings to tax or assess property within the village limits for the amounts thus assessed against the village that such assessments were unauthorized because for an illegal purpose, relator will have a right to be heard in defense.

We still think he has no right to bring *certiorari*.

Judgment affirmed.