# THE TELEX CORPORATION v. DATA PRODUCTS CORPORATION.

135 N. W. (2d) 681.

May 28, 1965—No. 39,557.

*Faegre & Benson, Armin M. Johnson, Gordon G. Busdicker,* and *Mitchell, Silberberg & Knupp,* for appellant.

*Cant, Haverstock, Beardsley, Gray & Plant, A. Lyman Beardsley, Robert F. Henson,* and *Farmer, Woolsey, Flippo & Bailey,* for respondent.

NELSON, JUSTICE.

This appeal is from a summary judgment and involves the interpretation and construction of a contract originally entered into between defendant, Data Products Corporation, and Telex, Inc., the predecessor in interest of plaintiff, The Telex Corporation. For convenience both plaintiff and its predecessor will be referred to hereafter as Telex.

The agreement under consideration on this appeal was dated October 11, 1962, and provided for the payment to Telex by Data of an indebtedness of $404,068.74, either in cash on or before September 30, 1967, or, at the option of Telex, in common stock of Data. The issue in the case is whether Telex exercised its option to convert the indebtedness to stock on September 30, 1963, at the rate of $2 per share, or on October 10, 1963, at the rate of $2.50 per share. The issue was decided by the trial court in favor of Telex on cross motions for summary judgment.

The pertinent provisions of the contract are the following:

2(c). "In the event that the Indebtedness or any part thereof remains unpaid on September 30, 1963, or in the event of any payment of the Indebtedness, or any part thereof, prior to September 30, 1963, Telex shall hereafter and until September 30, 1965, have the right to convert the Indebtedness into shares of common stock of Data in the following manner and to the following extent:

"(i) The right of conversion may be exercised by Telex,

"a. On September 30, 1963, or in the event of any payment on the Indebtedness prior to said date, at any time after receipt of notice

of Data's intent to prepay all or a portion of such Indebtedness, on the basis of one (1) share of common stock of Data for each Two Dollars ($2.00) in principal amount of the Indebtedness unpaid at the time the notice of the intention to exercise such rights is given by Telex;

"b. During the period beginning October 1, 1963, and ending September 30, 1964, on the basis of one (1) share of common stock of Data for each Two Dollars and Fifty Cents ($2.50) in principal amount of the Indebtedness unpaid at the time the notice of the intention to exercise such rights be given by Telex;

\*     \*     \*     \*     \*

"(iii)   Telex shall give written notice of its intention to exercise such right, specifying therein the amount of such Indebtedness sought to be converted, and *such right shall become effective ten (10) days after such notice is received by Data at its Lauderdale, Minnesota facility,* c/o Erwin Tomash (unless Telex is directed to send such notice to Data at a different address.)" (Italics supplied.)

Paragraph 9 of the agreement provides:

"Any notice which any party is required or may desire to give shall be deemed given three (3) days after a written copy of said notice is deposited in the United States mails registered mail, postage prepaid to the following addresses \* \* \*."

Pursuant to this provision Telex gave written notice of the exercise of its first unconditional right of conversion by mailing a notice to Data dated as of September 30, 1963, and admittedly received by Data before that date. Telex also served an identical notice personally upon a managing agent for Data on September 30, 1963. Telex claims that it properly exercised its right of conversion on September 30, 1963, at the rate of $2 per share. Data contends that the notice given by Telex did not result in the exercise of a conversion right until 10 days thereafter and that Telex thereby exercised its right of conversion existing during the period beginning October 1, 1963, and ending September 30, 1964, at the rate of $2.50 per share.

The determination of the meaning of paragraph 2(c)(iii) is the

primary issue. Data takes the position that the foregoing paragraph requires the giving of a written notice 10 days in advance of the exercise of any conversion right by Telex. Telex takes the position that this paragraph relates only to the fixing of a date for its transition from creditor to shareholder.

After Data's position became known to Telex the parties, on November 20, 1963, entered into an agreement entitled "Mutual Release" whereby Data agreed to issue 161,627 shares of its common stock to Telex, the number of shares to which Telex was entitled under Data's construction of the agreement of October 11, 1962, leaving the question of whether Telex is entitled to 40,407 additional shares for presentation to a court of competent jurisdiction in the State of Minnesota. The action herein followed, with the understanding that the dispute is to be resolved in accordance with Minnesota law.

■ There was agreement between the trial court and counsel for Telex and Data that there was no question of fact for determination and moreover that the contract was free from ambiguity. The function of this court, in cases of this nature on appeal, was stated in Employers Lia. Assur. Corp. v. Morse, 261 Minn. 259, 263, 111 N. W. (2d) 620, 624, by Mr. Justice Knutson:

"Whether a contract is ambiguous or not and therefore open to construction presents, in the first instance, a question for legal determination by the trial court. The trial court in this case determined that the contract was not ambiguous * * *. On appeal, it is for us to determine whether the trial court was correct in holding that there was no ambiguity and also whether the proper interpretation was given to the language used by the parties.

"A contract is ambiguous if it is reasonably susceptible to more than one construction."

■ Telex argues that the scope of review is limited by the doctrine that the trial court's decision is to be sustained unless it is without reasonable support in the evidence. While it is a well-established rule that all evidentiary doubts are to be resolved against the party to whom summary judgment has been granted, Abdallah, Inc. v. Martin, 242 Minn. 416, 65 N. W. (2d) 641, Telex contends that this rule does not

apply here because the parties have agreed that there is no evidentiary doubt to be resolved. It argues also that the hearing of cross motions below was the equivalent of a trial since all facts were before the trial court and ample time for argument was provided. Although Data contends that the trial court's decision is fully reviewable, since the appeal raises only questions of law, Telex argues that the principle that the lower court's determination is to be sustained unless it is without reasonable support in the evidence appears to be applicable notwithstanding that the issue in the case involves the interpretation to be placed upon a written agreement. It cites Independent School Dist. No. 877 v. Loberg Plumbing & Heating Co. 266 Minn. 426, 435, 123 N. W. (2d) 793, 799, wherein this court stated:

"* * * Applying this rule [of fair construction], we shall be obliged to affirm the decision of the trial court unless its interpretation of the pertinent provisions of the contract is unreasonable and contrary to the manifest intention of the parties, as disclosed by the language used and the inferences to be drawn therefrom, and is, therefore, without reasonable support in the written or extrinsic evidence."

Employers Lia. Assur. Corp. v. Morse, *supra,* relied upon by Data in support of its claim that there should be unlimited review, did not reach the question of the scope of review since it merely stated that the question to be determined by this court was whether the trial court had reached a correct decision. Although it would appear that the scope to be given to the review of the lower court's judgment is not vital in this case, since the agreement must be interpreted in accordance with the usual rules of construction, we think that the principle that the lower court's determination is to be sustained unless it is without reasonable support in the evidence is applicable notwithstanding the fact that the issue is the interpretation to be placed upon a written agreement.

■ Data describes the agreement in question as an option contract. While time may, according to some authorities, be of the essence in an option contract, the agreement here in question when viewed as a whole presents differences from the ordinary option contract. The agreement has conferred upon Telex election rights whereby it may

choose the time to accept payment of a preexisting indebtedness either in money or in stock and within a period of 10 days be transferred from the status of a creditor to that of a stockholder. Whether or not this agreement is regarded as a form of option contract, we think the decision of this court in Country Club Oil Co. v. Lee, 239 Minn. 148, 58 N. W. (2d) 247, cited by Data and also by the trial court in its memorandum, sets forth the approach to be followed in the construction of the terms of the agreement (239 Minn. 151, 58 N. W. [2d] 249):

"It is an elementary principle of law that a contract must be construed as a whole. The intention of the parties must be gathered from the entire instrument and not from isolated clauses. As far as is reasonably possible it is to be construed so as to harmonize all of its parts. 4 Dunnell, Dig. (3 ed.) § 1823."

That case involved an option.

Telex contends that the agreement clearly gave it conversion rights, exercisable at a specified time and during specified periods of time at varying rates, and required that it inform Data in writing on the date of the exercise of a conversion right of Telex' intention specifically to exercise that right in order to shift Telex' status from that of a creditor to that of a shareholder 10 days thereafter. Telex argues that the important thing to establish was not a period of time between the giving of the notice and the date of the exercise of the conversion but rather the fixing of an exact date for its transition from creditor to shareholder. As we view the overall agreement, it is clear that Telex was empowered thereby to exercise its options by giving notice of its intention to do so in the specified time or periods of time and that its status would shift from creditor to shareholder 10 days thereafter. Data's theory that no right of conversion would be effective until 10 days following receipt of notice would restrict paragraphs 2(c)(i)b and 2(c)(i)c—similar to paragraph 2(c)(i)b—by cutting 10 days from each of the periods of time therein established for the exercise of conversion rights. Thus the interpretation contended for by Data would make paragraph 2(c)(iii) alone dominant, reading something into the agreement that never was put there, and would bring some parts of the

agreement into conflict with others. We must reject an interpretation leading to that result if we are to gather the intention of the parties from the entire instrument and not from isolated clauses. We cannot ignore the elementary principle of law that a contract must be construed as a whole.

We think the applicable construction must be that when the parties used the term "notice of its intention to exercise," they referred to an act on the part of Telex which constituted the giving of written notice and that when they referred to and used the term "exercised," they referred to the creation of a legally binding relationship whereby Telex became obligated to accept and Data became obligated to issue and transfer stock in payment of the debt. The parties did not say in the contract that Telex should give notice 10 days in advance of the time to which its right of conversion related, although they clearly provided for advance notice with respect to prepayment. Moreover, while Data attempts to read into paragraph 2(c)(iii) the intent to require the giving of 10 days' notice by Telex in advance of exercising its conversion rights, it must be conceded that paragraph 2(c)(iii) does not speak in terms of advance notice, but does speak in terms of an effective date. The importance to the parties of establishing an effective date for Telex' transition from creditor to shareholder is obvious.[1]

Construing the contract as a whole, we find that all of its terms are clear and unambiguous. Under the circumstances there is no need to resort to practical construction. We have said time and again that in the interpretation of written agreements construction lies only in the field of ambiguity. See, Tynan v. KSTP, Inc. 247 Minn. 168, 77 N. W. (2d) 200; Minneapolis-St. Paul Sanitary Dist. v. City of St. Paul, 240 Minn. 434, 61 N. W. (2d) 533; Phil G. Ruvelson, Inc. v. St. Paul Fire & Marine Ins. Co. 235 Minn. 243, 50 N. W. (2d)

---

[1]In an article by George S. Hills in 19 Calif. L. Rev. 1, 18, the author states that "[i]mmediately upon conversion the privilege holder abandons his right to receive interest and acquires such dividends as the stock issued to him may carry." The article also clarifies questions as to voting or subscription rights after conversion.

629. In Minneapolis-St. Paul Sanitary Dist. v. City of St. Paul, *supra,* we held that where the written language of an instrument applied to the subject is clear, whether it be a statute, constitution, or contract, it is neither necessary nor proper in construing it to go beyond the wording of the instrument itself.

■ We are required to bear in mind that in the instant case we are dealing with a subject that is wholly contractual and that it is not for this court to create or add exceptions to the contract or to remake it in behalf of either of the contracting parties. It is not ordinarily the function of courts to rewrite, modify, or set aside contract provisions fully considered and agreed upon between the parties. Anderson v. Twin City Rapid Transit Co. 250 Minn. 167, 84 N. W. (2d) 593; Kennedy v. Westinghouse Elec. Corp. 29 N. J. Super. 68, 101 A. (2d) 592; Montgomery v. Board of Education, 102 Ohio St. 189, 193, 131 N. E. 497, 498, 15 A. L. R. 715, 718.

The Michigan Supreme Court in Muir v. Leonard Refrigerator Co. 269 Mich. 406, 409, 257 N. W. 723, 724, said:

"It is for the court to interpret the written contracts of parties; for when they have assented to definite terms and stipulations and incorporated them in formal documents, the meaning of these, it is supposed, can always be discovered on inspection * * *."

See, also, 17 Am. Jur. (2d) Contracts, §§ 242 to 244, as to standards of contract construction and interpretation.

Applying the foregoing rules of construction and contract interpretation, we conclude that the contract here under consideration provided that the right of conversion was exercised simultaneously with the giving of notice of Telex' intention to exercise the right, but that the stock conversion resulting therefrom did not become effective until 10 days after the giving of the notice. The determination of the trial court that Telex was a creditor of Data's until October 10, 1963, entitling Telex to a stock certificate evidencing its ownership of the 40,407 shares involved in this proceeding is affirmed.

Affirmed.