In the Matter of the Petition for IMPROVEMENT OF COUNTY DITCH NO. 86, BRANCH 1, COUNTY OF BLUE EARTH, Minnesota, Respondent,

v.

Blaine PHILLIPS, et al., Appellants.

Wayne Pestka, et al., Appellants,

v.

County of Blue Earth, Krengel Brothers Construction, Inc., Respondents.

Nos. C7–99–2051, C4–99–2105.

Court of Appeals of Minnesota.

July 25, 2000.

Ross Arneson, Blue Earth County Attorney; and Arvid Wendland, Wendland Timmerman, P.A., Blue Earth, for respondent County of Blue Earth.

Charles K. Frundt, Frundt & Johnson, Ltd., Blue Earth, for appellants.

Considered and decided by DAVIES, Presiding Judge, HALBROOKS, Judge, and HUSPENI, Judge.*

## OPINION

HALBROOKS, Judge.

In the context of a petition for improvement of County Ditch No. 86, Branch 1, appellants Blaine Phillips and Wayne Pestka contend that the district court erred by dismissing, first, their challenge to the adoption of the amended viewers' report by respondent County of Blue Earth and, second, their separate action seeking a declaratory judgment and injunction to stop construction of the drainage project by respondent Krengel Brothers Construction, Inc. Appellants claim that (1) under Minn.Stat. § 103E.511 (1998), the original viewers' report was final and the Blue Earth County Board lacked the authority to approve the amended report; (2) pursuant to Minn.Stat. § 103E.505, subd. 2 (1998), the construction contract could not be awarded until there was a final determination that benefits of the improvement

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

exceeded the costs; (3) dismissal of the claim for injunctive relief was error without a factual determination as to whether or not appellants would suffer irreparable injury; and (4) the stipulation signed by the parties did not preclude appellants from subsequently appealing the effect of the drainage authority's orders on non-owned parcels of land. We affirm.

## FACTS

Two petitions, one for improvement of the lower part of Branch 1 of Blue Earth County Ditch No. 86 and one for the upper part, were consolidated by the Blue Earth County Board in its capacity as a drainage authority. The improvement was established by order dated December 23, 1997. No one appealed from the establishment order itself pursuant to Minn.Stat. § 103E.095 (1998). But Minn.Stat. § 103E.341 (1998) provides that:

The drainage authority must dismiss the proceedings and petition, by order, if it determines that:

(1) the benefits of the proposed drainage project are less than the total cost, including damages awarded * * *.

Minn.Stat. § 103E.341, subd. 1.

Appellants and some other affected individuals challenged the benefits-and-damages awards contained in the establishment order, pursuant Minn.Stat. § 103E.091 (1998). In total, the determination of benefits and damages for 13 parcels of land were appealed. Appellants, who each own four parcels of land, appealed only the benefits and damages allocated to parcels they own. Their consolidated appeals were tried to a jury in January 1999. During trial, the jury heard testimony from the viewers[1] that they had made an error in the capitalization of the projected stream of income resulting from the anticipated enhanced productivity of

1. "Viewers" are defined in Minn.Stat. § 103E.305 (1998) as three disinterested residents of the state qualified to assess benefits and damages to property.

the land as a result of the improvement of Branch No. 1. As a result of the error, the benefit amounts originally calculated by the viewers were increased in each class of land. Appellants were first advised of this error two weeks before trial and appellants' counsel rigorously cross-examined the viewers on this issue at trial.

On January 20, 1999, the jury returned a verdict, finding benefits in the amount of $293,720 and damages in the amount of $29,438. The net effect of the jury's determination was that the cost of the improvement exceeded the benefits by $28,950. Appellants filed a motion for new trial. Before the entry of judgment, the parties drafted and signed a stipulation of settlement dated March 26, 1999, the day the hearing on appellants' post-trial motion was scheduled. The stipulation, relating to the 13 parcels then at issue, was subsequently incorporated into the trial court's findings of fact, conclusions of law, and order for judgment.

The stipulation contained the following provisions, among others:

The above entitled parties hereby stipulate and agree to settle and resolve all issues between the parties relating to the determination of benefits and damages in the above proceeding as follows:

1. That the jury verdict as to benefits and damages will become the benefits and damages as determined for Appellants land in the improvement for County Ditch No. 86, Branch 1, Blue Earth County, Minnesota.

* * * *

5. By entering into this Stipulation, the Appellants are not estopped and do not waive their right to challenge the feasibility of the ditch if the estimated costs and damages exceed the benefits.

It was also agreed that (1) the appellants would be paid for loss of crops if easements were not flagged prior to planting; (2) contractors would remove and replace the topsoil on disturbed ground; (3) appellants would be paid their damages in cash up front rather than have them offset against benefits; and (4) appellant Phillips would get an extra field crossing. The total cost of these negotiated terms was about $10,000.

Prior to this stipulated settlement, the Blue Earth County Board had accepted bids for construction of the improvement project. Assuming the amount of the lowest bid received for construction cost, appellants filed a petition with the county board seeking dismissal of the entire proceeding on the grounds that the total cost of the improvement exceeded benefits by $22,994.86, making the project unlawful.

On June 7, 1999, one of the original petitioners for improvement to the upper part of Branch 1, who had not been a party to appellants' original lawsuit, filed a petition with the county board. The petition sought to amend the viewers' report to correct the errors in the original report. The amended report increased total benefits to $324,186, making the project lawful.

A hearing on separate petitions filed by appellants and respondents was held on August 9, 1999. Following the hearing, the county board issued an order adopting the amended viewers' report determining the benefits to be $324,186 and the projected cost of the improvement to be $313,577. The August 9, 1999 order did not affect the benefits or damages for appellants' previously appealed parcels. Based on this order, the benefits of the project exceeded the cost.

Within 30 days after the entry of the county board's order, appellants, although they do not own any of the affected parcels, served and filed their notices of appeal to the district court pursuant to Minn. Stat. § 103E.091 with respect to each parcel of land that had an increase in benefits resulting from the order. Respondents served a motion to dismiss the appeals on September 8, 1999.

At an October 5, 1999 meeting of the county board, an order was entered, over appellants' objections, awarding the con-

struction contract to respondent Krengel Brothers Construction, Inc. The contract amount was $129,834.60. On October 15, 1999, appellants served a separate summons and complaint seeking declaratory and injunctive relief against respondents.

A combined hearing on the appellants' motion for a temporary restraining order and respondents' motion for dismissal was held on October 26, 1999. Respondents argued that dismissal was proper on the grounds that appellants had settled all their claims on March 26, 1999, and were precluded from appealing from an increase of the benefits on land owned by other people. Following the hearing, the district court dismissed appellants' statutory appeal pursuant to Minn.Stat. § 103E.091. The court then dismissed appellants' declaratory judgment and injunctive relief action as moot. No memorandum was filed. This appeal follows.

## ISSUES

1. Did a stipulation of settlement entered into by the parties act as a bar to any future appeals relating to the same drainage project?

2. Is res judicata applicable to appeals from administrative-agency decisions specifically related to drainage-improvement projects?

3. Does a landowner seeking to challenge the amount of benefits or damages awarded in an establishment order for a drainage project have standing to appeal awards that relate exclusively to lands not owned by that party?

4. Was the district court's dismissal of appellants' action for declaratory judgment and injunctive relief proper?

## ANALYSIS

### 1. Standard of Review

■ Where the trial court reviewing an agency decision makes independent factual determinations and otherwise acts as a court of first impression, this court applies the "clearly erroneous" standard of review. Where, on the other hand, the trial court is itself acting as an appellate tribunal with respect to the agency decision, this court will independently review the agency's record. *In re Hutchinson,* 440 N.W.2d 171, 175 (Minn.App.1989) (quotation and citations omitted), *review denied* (Minn. Aug. 9, 1989). In this instance, the district court based its decisions on legal rather than factual considerations. This court conducts a de novo review of such issues and is not bound by the legal conclusions of the district court or the agency itself. *Id.* Furthermore, statutory construction is a question of law, which we review de novo. *Sorenson v. St. Paul Ramsey Med. Ctr.,* 457 N.W.2d 188, 190 (Minn.1990).

### 2. The District Court's Dismissal of Appellants' Second Appeal of Benefits and Damages

#### A. Stipulation of Settlement

Respondents maintain that appellants' second appeal to the district court is barred by the stipulation of settlement entered into by the parties on March 26, 1999, following the jury verdict in appellants' challenge to the benefits and costs determined for parcels they and others owned. Respondents contend that they would not have entered into the stipulation if the threat of future litigation was not precluded in a "global" fashion.

■ "Stipulations are treated and interpreted as binding contracts." *Emerick ex rel. Howley v. Sanchez,* 547 N.W.2d 109, 112 (Minn.App.1996) (citation omitted). But the parties dispute the meaning of paragraph five of the stipulation.

■ A contract provision is unambiguous when its meaning can be ascertained "without any guide other than knowledge of the facts on which the language depends for meaning." *VanderLeest v. VanderLeest,* 352 N.W.2d 54, 57 (Minn.App.1984) (citations omitted). Absent ambiguity, it is not proper for a court to interpret a stipu-

lation or a contract. *See Starr v. Starr,* 312 Minn. 561, 562–63, 251 N.W.2d 341, 342 (1977) (court cannot construe stipulation language that is plain and unambiguous); *Telex Corp. v. Data Prods. Corp.,* 271 Minn. 288, 295, 135 N.W.2d 681, 686–87 (1965) (if a contract is clear, "it is neither necessary nor proper in construing it to go beyond the wording of the instrument itself"). Paragraph five of the parties' stipulation is not ambiguous. It specifically reserves a right to challenge the feasibility of the ditch *if* the estimated costs and damages exceed the benefits. The stipulation is not "global" and could not entirely preclude a subsequent appeal the way it is drafted.

## B. Res Judicata

Respondents next contend that res judicata applies as a bar to the second appeal. Determining the availability of res judicata is a legal question, which this court reviews de novo. *Paulos v. Johnson,* 597 N.W.2d 316, 319–20 (Minn.App.1999) (citing *Hibbing Educ. Ass'n v. Public Employment Relations Bd.,* 369 N.W.2d 527, 529 (Minn.1985)), *review denied* (Minn. Sept. 28, 1999). Ordinarily, a final judgment on the merits serves as an absolute bar to a second suit involving identical parties and the same cause of action, and conclusively determines every matter that was litigated or may have been litigated. *Beutz v. A.O. Smith Harvestore Prods., Inc.,* 431 N.W.2d 528, 531 (Minn.1988) (citation omitted).

Respondents maintain that the benefits allocated to non-owned lands could have been litigated in the first appeal. This is correct. *See* Minn.Stat. § 103E.091, subd. 2(a) (1998). Appellants correctly point out, however, that the action of the county board with respect to raising the benefits on the non-owned lands had not occurred prior to the judgment being entered on the first appeal.

Res judicata is also considered an equitable doctrine that must be applied in light of the facts of each individual case.

*R.W. v. T.F.,* 528 N.W.2d 869, 872 n. 3 (Minn.1995). The court must focus on whether applying res judicata would work an injustice on the party against whom it is urged. *Id.* This court has previously stated that the doctrine of res judicata may not be as applicable to administrative agencies as it is to court decisions because of fundamental differences between the two:

> Court decisions are reflected in a judgment which is docketed and final; the trial court's work is at an end with regard to the matter. In the administrative process, however, agencies typically exert continuing supervisory and regulatory jurisdiction over the affected person. In addition, administrative policies are in a constant state of change, and administrative decision-makers are not only adjudicating but often policy-making. Finally, administrative agencies are charged by a legislative body with protecting public health, safety, and welfare, not merely resolving past adjudicative facts in light of existing law.

*Wangen v. Commissioner of Pub. Safety,* 437 N.W.2d 120, 123 (Minn.App.1989) (quoting W. Keppel & D. Gilbert, *Minnesota Administrative Practice and Procedure* § 624 at 119–20 (1982)), *review denied* (Minn. May 12, 1989). Given the facts of this case, the application of res judicata would not be equitable.

## C. Non–Owned Property and Standing

Respondents contend that the statute does not allow a party to appeal *only* non-owned lands. This issue is one of first impression.

The procedure for appealing benefits and damages is set out as follows:

> Procedure for appeals related to benefits and damages. (a) A person who appeals the amount of benefits or damages *may include benefits and damages affecting property not owned by the appellant.* Notice of the appeal must be

served to the auditor and to the owner or occupant of property included in the appeal or to the attorney representing the property owner in the proceedings.

(b) The appellant must file a notice of appeal with the auditor within 30 days after the order to be appealed is filed. The notice must state the particular benefits or damages appealed and the basis for the appeal. Within 30 days after the notice is filed, the auditor must file the original notice with the court administrator of the district court.

Minn.Stat. § 103E.091, subd. 2 (1998) (emphasis added). Respondents emphasize the language "may include * * *" in subsection (a). They argue that appellants, in seeking to appeal only non-owned lands, are attempting to read subdivision 2 to permit bifurcation of their appeals.

■■■■■ "The objective of statutory interpretation is to ascertain and effectuate the intent of the legislature." *State v. Coauette*, 601 N.W.2d 443, 445 (Minn.App. 1999) (citing Minn.Stat. § 645.16 (1998)), *review denied* (Minn. Dec. 14, 1999). As a fundamental principle of statutory interpretation, this court "should look first to the specific statutory language and be guided by its natural and most obvious meaning." *Heaslip v. Freeman*, 511 N.W.2d 21, 22 (Minn.App.1994), *review denied* (Minn. Feb. 24, 1994).

It is clear that the legislature intended to allow for appeals when it enacted Minn. Stat. § 103E.091, subd. 2. But respondents contend that if the legislature had intended to allow an individual to appeal non-owned property only, it could have used the language "may appeal" in place of "may include."

■■■■ As indicated by Minn.Stat. § 645.16 (1998), the "consequences of a particular interpretation" is an important consideration when ascertaining legislative intent. If Minn.Stat. § 103E.091 is interpreted to allow a party to unilaterally appeal property that the party does not own, as appellant argues, the consequence of

such an action would be to confer standing on that party to intrude on the affairs of others when the party has no interest of its own.

■■■■ "Standing is a jurisdictional question to be determined by this court." *In re Implementation of Util. Energy Conservation Improvement Programs*, 368 N.W.2d 308, 312 (Minn.App.1985) (citation omitted).

> In the absence of a discernible legislative intent to the contrary, it has long been established that a person has standing to invoke judicial review of agency action only if that person suffers "injury in fact" as a consequence of that action.

*In re Sandy Pappas Senate Comm.*, 488 N.W.2d 795, 797 (Minn.1992) (citation omitted).

> [T]he fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a * * * court and not on the issues he wishes to have adjudicated.

*Sundberg v. Abbott*, 423 N.W.2d 686, 688 (Minn.App.1988) (quoting *Flast v. Cohen*, 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968)), *review denied* (Minn. June 29, 1988). "A party must have more than an abstract concern and the injury must not be merely speculative." *State v. Knutson*, 523 N.W.2d 909, 911 (Minn.App. 1994) (citation omitted), *review denied* (Minn. Jan. 13, 1995). "To have standing, a plaintiff * * * must allege specific, concrete facts showing [they have] been personally harmed." *Villars v. Provo*, 440 N.W.2d 160, 162 (Minn.App.1989) (citation omitted). Appellants have not alleged an injury in fact because they have not demonstrated that they were personally harmed by the amended viewers' report adopted on August 9, 1999.

■■■■ Appellants' ultimate objective has been to thwart the improvement project in its entirety. To do so, appellants challenged the benefits/cost ratio in their own trial and, following settlement of those

claims, seek to reframe the same issue in the name of other parcel owners. In this case, the county board's actions, with regard to the non-owned property, had no impact on appellants' benefits-and-damages assessments. The amended order adopted by the county board redetermined benefits and cost on parcels not involved in the jury verdict. The resulting effect is to advance completion of the drainage project, to which the appellants are opposed. But there is no "injury in fact" to appellants. Therefore, appellants lack standing to appeal benefits-and-damages decisions affecting only non-owned property. The district court's dismissal of the appeal on this basis was appropriate.

### 3. The District Court's Dismissal of Appellants' Action for Declaratory Judgment and Injunctive Relief

Appellants challenge the validity of the drainage authority's award of the improvement contract while an appeal of benefits was still pending, based on Minn.Stat. § 103E.505, subd. 2 (1998), which provides:

> If an appeal regarding the determination of benefits and damages is made within 30 days after the order establishing the drainage project has been filed, a contract may not be awarded until the appeal has been determined, *unless the drainage authority orders the contract awarded.*

(Emphasis added.) The drainage authority ordered the contract awarded to Krengel Construction at a hearing held October 5, 1999.

At the October 26, 1999 hearing, appellants acknowledged that their declaratory judgment/injunctive relief claim would be moot if the appeal were dismissed. The district court included this admission in its order dismissing the declaratory judgment and injunctive relief action.

Because of our decision that dismissal of this matter was proper on the ground that appellants lack standing, we do not reach this issue.

## DECISION

Appellants lack standing to challenge the drainage authority's adoption of an amended viewers' report that modified benefits-and-damages awards relating exclusively to property not owned by appellants.

**Affirmed.**

DAVIES, Judge (dissenting).

I respectfully dissent.

Although I agree with the majority in all other respects, the majority gives an unreasonably narrow reading to Minn.Stat. § 103E.091 (1998). Subdivision 1 of that section is a broad grant of authority to landowners to

> appeal to the district court from a recorded order of a drainage authority made in a drainage proceeding that determines:
>
> (1) the amount of benefits;
>
> (2) the amount of damages;
>
> (3) fees or expenses allowed; or
>
> (4) whether the environmental and land use requirements and criteria * * * are met.

Despite this broad authority to appeal, the majority finds in subdivision 2 a limitation on this authority deriving from the word "include." They read it as if it said the person who appeals "may include benefits and damages affecting property not owned by the appellant" only in conjunction with an appeal of the amount of benefits or damages *to their own property.* I read the provision differently; I believe it authorizes an appeal limited to the benefits and damages to the property of others, or to the total benefits and costs, so long as the appellant has standing because the project affects the appellant directly. The majority focuses on the word "include," but it ignores the larger context in which it is used.

There are many situations in which a landowner may have a reason to appeal a

drainage decision, yet have no reason to challenge the benefit allocation to its own land. One that comes to mind is when the landowner is satisfied with the amount of benefits allocated to its own property, but feels that the benefits allocated to other properties (and the assessments against them) are inappropriately low. The issue the party wants to raise in that circumstance relates to other people's properties, rather than its own. Why should an appellant not be able to bring to the district court the issue of benefit to other properties, without complicating the case with a phony claim relating to the appellant's own property?

Another example is when landowners do not want a project to go ahead and will themselves bear some of the cost if it does. Why should they not be able to pursue their claim of overall imbalance between benefit and cost, an imbalance that destroys the legality of the project, without complicating the case with a baseless claim about their own benefits?

The action of the appellants should be allowed to proceed. They are directly affected by this project. If they were not, contrary to the concern expressed by the majority, the ordinary judicial rules of standing would apply to prevent them from intruding into the affairs of others.