**Loren HENTGES, et al., Relators,**

**v.**

**MINNESOTA BOARD OF WATER AND SOIL RESOURCES, Rice Creek Watershed District, St. Paul Audubon Society, et al., and Minnesota Department of Transportation, Respondents.**

**No. C7–01–799.**

Court of Appeals of Minnesota.

Jan. 4, 2002.

---

Paul R. Haik, Krebsbach & Haik, Ltd., Minneapolis, for relators.

Mike Hatch, Attorney General, William A. Szotkowski, Assistant Attorney General, St. Paul, for respondent Minnesota Board of Water and Soil Resources.

Harold H. Sheff, Michelle J. Ulrich, Smith, Gendler, Shiell, Sheff, Ford, & Maher, P.A., Minneapolis, for respondent Rice Creek Watershed District.

A.W. Clapp III, St. Paul, for respondents St. Paul Audubon Society, et al.

David L. Phillips, Office of the Attorney General, St. Paul, for respondent, Minnesota Department of Transportation.

Gerald W. Von Korff, John C. Kolb, Rinke Noonan, St. Cloud, for Amicus Curiae Lac qui Parle County and Polk County.

Considered and decided by GORDON W. SHUMAKER, Presiding Judge, HALBROOKS, Judge, and MULALLY, Judge.[*]

## O P I N I O N

GORDON W. SHUMAKER, Judge.

Relators challenge the Board of Soil and Water's affirmance of the Rice Creek Watershed District's denial of relators' petition for an exemption from the wetland replacement requirement. Specifically, relators allege that (a) the Board exceeded its statutory authority by adopting Minn. R. 8420.0122, subp. 3(A) (1999), which sets a standard for wetlands replacement that is different from Minn.Stat. § 103G.2241 (2000); (b) the District's misapplication of 33 U.S.C. § 1344(f) regarding whether wetlands replacement was necessary resulted in a misapplication of Minn.Stat. § 103G.2241; (c) Minn. R. 8420.0122, subp. 3(A), deprives relators of equal protection, due process of law, and just compensation for property taken for public use by limiting their ability to maintain a county ditch; (d) the Board failed to address procedural errors made by the District in these proceedings; and (e) certain participants in the proceedings below did not appeal and cannot be participants in this appeal. Because we find no reversible error, we affirm.

## FACTS

Relators own lands adjacent to Anoka County Ditch No. 53–62. They claim that

---

[*] Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

the placement and obstruction of certain culverts in the ditch system cause water to overflow and to flood their lands. This appeal focuses principally on a culvert in the ditch at I–35W, in the Rice Creek Watershed District. The Minnesota Department of Transportation installed that culvert in the late 1950s. Over the years, the culvert has risen to a higher elevation as a result of natural forces. Relators want it to be lowered to the height of the original placement, and they want the sediment in the ditch removed.

The ditch work that relators propose will cause partial drainage of adjacent wetlands that have existed for over 25 years. State law requires that partially drained wetlands be replaced, unless the work that caused the drainage is exempt from the replacement requirement.

The local government unit with jurisdiction may determine eligibility for a replacement exemption. This is the Rice Creek Watershed District. Contending that the proposed project is simply ditch maintenance and that federal law exempts ditch maintenance from the replacement requirement, relators asked the District for an exemption.

The District denied the exemption, and on administrative appeal the Board of Water and Soil Resources affirmed, invoking one of its own rules that the federal exemption is inapplicable if the work will partially drain a wetland.

Relators have brought the Board's denial to this court through certiorari for review. They challenge the authority, propriety, and constitutionality of the Board's rule; the propriety of dividing the exemption process into two phases; and the propriety of participation by civic and environmental-advocacy groups in the appeal to the Board and in this appeal.

## ISSUES

1. Did the Board of Soil and Water Resources exceed its statutory authority in adopting Minn. R. 8420.0122, subp. 3(A), to prevent maintenance of public drainage ditches as authorized by Minn.Stat. § 103G.2241, subd. 3(1) (2000)?

2. Did the Board of Water and Soil resources misapply 33 U.S.C. § 1344(f)?

a. If so, did this error affect the decision regarding the exemption authorized by Minn.Stat. § 103G.2241, subd. 3(1)?

3. Does Minn. R. 8420.0122, subp. 3(A), unconstitutionally deny relators their right to:

a. Equal Protection?

b. Due Process?

4. Are persons who did not file a notice of appeal parties to this appeal?

5. Did the Board engage in unlawful procedures that affected the outcome of the case and were prejudicial to relators by:

a. extending the deadline in which to render a decision without extenuating circumstances?

b. delegating the decisions to an administrator and technical evaluation panel?

c. bifurcating the exemption proceedings?

## ANALYSIS

### 1. *The Board's Authority*

In Minnesota, "wetlands may not be drained * * * unless * * * [they] are replaced by wetlands that will have equal or greater public value." Minn.Stat. § 103G.221, subd. 1 (2000). However, a replacement plan is not required for "activities exempted from federal regulation under United States Code, title 33, section 1344(f) * * *," the so-called "federal ap-

provals" exemption. Minn.Stat. § 103G.2241, subd. 3(1) (2000).

The federal approvals exemption classifies as a "non-prohibited" activity "the discharge of dredged or fill material * * * for the purpose of maintenance * * * of currently serviceable structures * * *." 33 U.S.C. § 1344(f)(1)(B) (1994).

This federal exemption, which allows the discharge of dredged and fill materials into certain waters, is qualified by a state rule that (1) requires proof of eligibility for the exemption, and (2) provides that the exemption is not applicable to any project that will partly drain a wetland:

> The local government unit may certify the exemption only if the landowner furnishes proof of qualification for one of the exemptions from the United States Army Corps of Engineers.
>
> This exemption does not apply to a project with the purpose of converting a wetland to a nonwetland, either immediately or gradually, or converting the wetland to another use, or when the fill will result in significant discernible change to the flow or circulation of water in the wetland, or partly draining it, or reducing the wetland area.

Minn. R. 8420.0122, subp. 3A (Supp. II 2000).

■ Relators obtained the requisite proof from the Army Corps of Engineers that the ditch work meets the requirements of the federal exemption. But, applying the rule that limits the exemption, the Board of Water and Soil Resources denied the exemption. Relators contend that the Board exceeded its statutory authority in adopting Minn. R. 8420.0122, subp. 3A.

■ When an administrative agency's authority is questioned, this court independently reviews the enabling statute. *Weber v. Hvass,* 626 N.W.2d 426, 431 (Minn.

App.2001), *review denied* (Minn. June 27, 2001). Minn.Stat. § 103G.2242, subd. 1(a) (2000), gives the Board authority to adopt rules regarding wetland replacement plans. *See also* Minn. R. ch. 8420 (chapter of rules implementing act). "Generally, we will invalidate an agency rule only if the rule was adopted in excess of the agency's statutory authority." *Drum v. Bd. of Water & Soil Res.,* 574 N.W.2d 71, 73 (Minn.App.1998).

In enacting the Wetland Conservation Act of 1991, the Minnesota legislature clearly stated its intent to "achieve no net loss in the quantity, quality, and biological diversity of Minnesota's existing wetlands * * *." Minn.Stat. § 103A.201, subd. 2(b)(1) (2000). To achieve "no net loss" of wetlands, the legislature provided the requirement that partly drained wetlands be replaced. Minn.Stat. § 103G.222, subd. 1(a) (2000). On its face, rule 8420.0122, subp. 3A, comports with legislative intent because, if followed, the rule will ensure that even ditch maintenance that causes wetland drainage will not result in net loss of Minnesota wetlands.

Not only does the rule satisfy express legislative intent, but the process for promulgation disclosed no conflict between the rule and the statutory authority for the rule. In the administrative law judge's report under Minn.Stat. § 14.15 (1992), no comments or concerns from the public were noted, and the report contained a recommendation that the rule be adopted. The chief administrative law judge approved the report. *See* Minn.Stat. § 14.16 (1992) (after chief ALJ approves the changes in the rules made in accordance with the ALJ's report, the agency then may adopt the rules).

Although there is some ambiguity in how the federal approvals exemption is to be applied, relators' interpretation seems clearly at odds with both the express lan-

guage of the statutes and the state's policy of achieving no net loss of wetlands. Thus, on this record, we conclude that the Board did not exceed its statutory authority in adopting rule 8420.0122, subp. 3A.

### 2. *Application of 33 U.S.C. § 1344(f)*

Relators argue that the Board misapplied section 1344(f) by failing to follow the law as set forth in *United States v. Sargent County Water Res. Dist.*, 876 F.Supp. 1090 (D.N.D.1994).

In *Sargent*, the issue was whether the ditch work was an improvement or maintenance. If maintenance, it was exempt from section 1344(f) regulation. *Id.* at 1098–99. The federal district court determined that only ditch maintenance was involved, and that the discharge of the material into the wetland was a non-prohibited activity under section 1344(f). *Id.* at 1102–04.

Relators contend that here, too, only ditch maintenance is involved and that is an exempt activity. They also suggest that it is common sense that some drainage will occur with ditch maintenance, but because the runoff is part of a maintenance project no replacement of the runoff is required. Relators assert that the exemption is negated by a rule that does not apply the exemption to ditch maintenance.

■ As we have indicated, the relationship of the exemption and the statutory and policy language is not entirely clear. But the exemption refers to the activity of putting dredged and fill material into a wetland, thus obviously causing some loss of water. The record here shows that it is not depositing fill but rather draining part of 66.6 acres that will be the result of the ditch work. Thus, because the exemption has a focus different from what apparently will be done in this ditch work and because of the unassailable conclusion that the legislature intends that there be no net loss of

Minnesota wetlands, we are not persuaded that the Board misapplied the law in denying the exemption.

### 3. *Constitutional Issues*

#### a. Due Process

■ Relators argue that the state unconstitutionally took their land without just compensation by passing laws and promulgating rules that prohibit or restrict the maintenance of the ditch. However, neither the District nor the Board has ever prohibited relators from maintaining the ditch; rather, the District and the Board require that if relators do lower the culvert, causing partial drainage of the nearby wetlands, the lost acreage of wetlands must be replaced by wetlands "that will have equal or greater public value." Minn. Stat. § 103G.221, subd. 1. Thus, there is no due process violation in this case because relators have always been free to maintain the ditch.

Furthermore, Minnesota courts have recognized that the maintenance of ditches may be subject to environmental laws. *See In re Christenson*, 417 N.W.2d 607, 615 (Minn.1987) (finding that environmental laws prohibited the applicant from enlarging or draining private drainage ditches and drain a protected wetland). Thus, the Board's denial of relators' request to be exempted from the wetland replacement requirement did not constitute a violation of relators' due-process rights.

#### b. Equal Protection

■ Relators also argue that the District's and the Board's actions violate relators' rights to equal protection. However, relators make this argument only in a conclusory fashion in their brief to this court. An assignment of error based on "mere assertion" and not supported by argument or authority is waived unless

prejudicial error is obvious on mere inspection. *State v. Modern Recycling, Inc.,* 558 N.W.2d 770, 772 (Minn.App.1997) (quotation omitted). It is not obvious on mere inspection how the denial of relators' request for the "federal" exemption violates their right to equal protection. This issue is waived.

### 4. *Parties to Appeals*

■ Relators argue that the Board erred in allowing ABC League of Women Voters, the St. Paul Audubon Society, and the Izaak Walton League, Minnesota Division, to participate in the appeal to the Board. An appeal may be made by the wetland owner, by any party who is required to receive notice under Minn.Stat. § 103G.2242, subd. 7 (2000), or by 100 residents of the county in which a majority of the wetland is located. Minn.Stat. § 103G.2242, subd. 9 (2000); Minn. R. 8420.0250, subp. 1 (Supp. II 2000). Parties to an appeal are the appellant, the landowner, the local government unit, and in the case of replacement plan appeals, all those required to receive notice of the local government unit decision.

Minn. R. 8420.0250, subp. 3 (Supp. II 2000). A party required to receive notice is a member of the public who requests a copy of the decision. Minn.Stat. § 103G.2242, subd. 7. This case involves the requirement of a wetlands replacement plan, and ABC, Walton, and the Audubon Society requested, and received, a copy of the District's decision, and thus are proper parties to the appeal. ABC, Walton, and the Audubon Society did not file notices of appeal because they agreed with the District's decision.

Although Minn.Stat. § 103G.2242, subd. 9, limits the persons eligible to appeal a decision, it does not state that only one of the eligible parties may appeal. Thus, all of the eligible parties may appeal if they desire. Furthermore, Minn. R. 8420.0250, subp. 3, indicates that if an appeal is brought, ABC, Walton, and the Audubon Society are parties to the appeal because they were parties required to receive notice of the District's decision. Since ABC, Walton, and the Audubon Society were all eligible parties to appeal the District's decision, and they are considered parties to an appeal under the Board's administrative rules, the Board did not err in allowing these parties to participate in the appeal.

### 5. *Procedural Issues*

a. Extensions

■ Relators argue that it was unlawful for the Board to deny their exemption request after the 60 day time limit as required by Minn.Stat. § 15.99 (2000), and in doing so, the Board effectively granted their request for a "federal" exemption. An agency must approve or deny within 60 days a written request for a permit. Minn.Stat. § 15.99, subd. 2. Failure to do so is approval of the request. *Id.* However, an agency may extend the time limit by providing written notice of the extension, which details the reasons for and the anticipated length of the extension, before the end of the initial 60–day period. Minn. Stat. § 15.99, subd. 3(f).

The record shows that two extensions were given. The first extension letter refers to relators' request for an exemption to lower the culvert, which was received by the District on September 27, 2000. The letter then notifies relators that, under Minn.Stat. § 15.99, the District is extending the time limit in which to render a decision to 30 days past the November 26, 2000, deadline, for the purpose of "consider[ing] evidence and legal issues regarding application of exemption." This notice complies with the requirements of the statute. The record shows that the decision was rendered within this time period.

The District sent its second letter to relators on December 18, 2000. The letter notes that relators requested an exemption from the wetland replacement requirement under the "federal" exemption on October 25, 2000, and that the notice was being sent under Minn.Stat. § 15.99 extending the time limit by 60 days. A decision was rendered within that 60–day extension period.

The record shows that both decisions were timely, the extensions were authorized by law, and the notices complied with the law. Thus, these extensions were lawful, and relators have not shown how they were prejudiced.

b. Delegating Decisions

■ Relators argue that the District erred in delegating exemption determinations to the "Administrator." However, there is nothing in the record indicating that anything was delegated to any "Administrator," and relators do not explain the argument beyond this one-sentence conclusory statement. An assignment of error based on "mere assertion" and not supported by argument or authority is waived unless prejudicial error is obvious on mere inspection. *Modern Recycling*, 558 N.W.2d at 772 (quotation omitted). Furthermore, there is no indication that this argument was raised either before the District or the Board. This court will generally not consider matters not argued and considered below. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988).

c. Bifurcation

■ Relators argue that the Board's bifurcation of this case into two phases, the first to determine jurisdictional issues, the second to determine issues on the merits, affected the outcome of the case and prejudiced relators. Relators first argue that they were denied the opportunity to be heard. However, the record shows that relators not only filed briefs at both phases of the hearings and participated in oral arguments, but they also filed "responses" to advisory reports to the Board at both phases of the proceedings. Relators had an opportunity to be heard, and took advantage of that opportunity.

Relators also argue that splitting the case into phases was done for the sole purpose of avoiding a final determination on the merits. A transcript of the proceeding shows that the Board's Dispute Resolution Committee (DRC) wanted to determine who had standing to be a party to the dispute before any arguments on the merits were considered. *See Sundberg v. Abbott*, 423 N.W.2d 686, 688 (Minn.App.1988) (a party must have standing in a dispute in order to have the court decide the merits of particular issues), *review denied* (Minn. June 29, 1988). Because it was important to determine who was able to participate in the proceedings before issues on the merits were considered, it was not unlawful for the DRC to bifurcate the proceedings to first determine who was entitled to be heard in this matter.

Lastly, relators provide no evidence showing how they were prejudiced, or how the bifurcation of the proceedings affected the outcome of the case. An assignment of error based on "mere assertion" and not supported by argument or authority is waived unless prejudicial error is obvious on mere inspection. *Modern Recycling*, 558 N.W.2d at 772 (quotation omitted). Prejudicial error is not obvious on mere inspection of this case. Furthermore, this court declines to address allegations unsupported by legal analysis or citation. *Ganguli v. Univ. of Minnesota*, 512 N.W.2d 918, 919 n. 1 (Minn.App.1994).

Although we hold that the Board did not exceed its authority in adopting or applying Minn. R. 8420.0122, subp. 3A, we are

troubled by the potential inequity of requiring landowners to choose between forgoing the use of their lands and incurring considerable expense to replace wetlands. We are left with an apparent gap in legislation that we have no authority to fill, but that, in the interest of fairness, ought to be addressed by the legislature.

### DECISION

Neither the Board nor the District misapplied the "federal" exemption, nor did these entities act unlawfully in the process that led to the decisions in this case.

**Affirmed.**