**MINNESOTA CENTER FOR ENVIRONMENTAL ADVOCACY, The Coalition for a Clean Minnesota River, and New Ulm Area Sportfishermen, Respondents,**

v.

**The BIG STONE COUNTY BOARD OF COMMISSIONERS and The County of Big Stone, Minnesota, Appellants.**

No. C7–01–1161.

Court of Appeals of Minnesota.

Jan. 15, 2002.

Byron E. Starns, Leonard, Street and Deinard, Minneapolis, for respondents.

Noah D. Hall, Mark F. Ten Eyck, Minnesota Center for Environmental Advocacy, St. Paul, for respondent Minnesota Center for Environmental Advocacy.

Jay T. Squires, Ratwik, Roszak & Maloney, P.A., Minneapolis, for appellants.

Mike Hatch, Attorney General, Craig L. Engwall, Assistant Attorney General, St. Paul, for Amicus Curiae State of Minnesota Department of Natural Resources.

Considered and decided by SHUMAKER, Presiding Judge, STONEBURNER, Judge, and HUSPENI, Judge.[*]

## OPINION

STONEBURNER, Judge.

Respondents Minnesota Center for Environmental Advocacy, the Coalition for a Clean Minnesota River and the New Ulm Area Sportfishermen sought a declaratory judgment that a proposed repair to Big Stone County Ditch No. 2/2A (County Ditch 2) requires (1) permission of the Commissioner of the Department of Natural Resources (DNR) pursuant to Minn. Stat. § 103E.011, subd. 3; (2) a public waters work permit from the DNR pursuant to Minn.Stat. § 103G.245; (3) an Environmental Impact Statement (EIS); and (4) a wetland-replacement plan approved pursuant to Minn.Stat. §§ 103G.222 and 103G.2242.

The district court granted partial summary judgment to respondents, declaring that the project requires a public waters work permit and permission from the Commissioner of the DNR. After trial, the district court concluded that the project does not require an EIS but does require either an approved wetland-replacement plan or an exemption from the requirement by the appropriate government agency. The district court also concluded that the Environmental Assessment Worksheet (EAW) used by appellants was fatally flawed, and ordered a new EAW and review before the project could proceed.

Appellants, the drainage authority for Big Stone County, appeal the district court's determination that the EAW is fatally flawed and that the project requires a

work permit, permission from the commissioner, and a wetland-replacement plan. Respondents seek review of the district court's determination that the project does not require an EIS. Because we conclude that the project requires either permission from the commissioner or a public waters work permit, requires an approved wetland-replacement plan or exemption from the appropriate agency, and is subject to a mandatory EIS, we affirm in part and reverse in part.

## FACTS

County Ditch 2 was built in 1907 through a pre-existing natural watercourse to drain adjacent areas for agricultural use. County Ditch 2 passes through DNR-protected wetland 6–11W. Wetland 6–11W is an approximately 60–acre public water, Type–5 wetland, defined as

[i]nland open fresh water, shallow ponds, and reservoirs in which water is usually less than ten feet deep and * * * fringed by a border of emergent vegetation similar to open areas of type 4 wetland.

Minn.Stat. § 103G.005, subd. 17b (5) (2000). Bottom elevations in wetland 6–11W range from 1005.7 to 1007.5 feet above sea level.

In 1915, landowners petitioned appellants to widen and enlarge the ditch. The width of the ditch as it currently exists is consistent with the 1915 "as-improved" width. The depth of the portion of County Ditch 2 located below wetland 6–11W was 1004.48 feet, mean sea level, "as improved" in 1915, but accumulated sediment has raised bottom elevations. In 1994, landowners petitioned appellants to comprehensively repair County Ditch 2, including

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

removal of sediment from the ditch below wetland 6–11W to reestablish the as-improved 1915 depth. The district court found that this work would constitute a "repair" as defined by Minn.Stat. § 103E.701 (2000).

In response to the 1994 petition, appellants commissioned a report from Sioux Engineering on the impact of the project. The report indicated that removing sediment from the ditch below wetland 6–11W would affect water levels in the wetland, triggering environmental review. Sioux Engineering recommended that appellants install a weir to eliminate any effect on the wetland, and the additional expense of environmental review. The weir solution is acceptable to respondents and the DNR but not to appellants. Appellants proceeded in 1995 and 1996 with major repairs to County Ditch 2, but did not remove sediment downstream of wetland 6–11W.

In July 1998, appellants received a new petition for removal of the sediment downstream of wetland 6–11W. Initially, appellants unanimously approved a resolution finding that "the repair * * * does not have the potential for significant environmental effects" and that an EIS was not required. Appellants rescinded this resolution on advice of counsel and retained Sioux Engineering to prepare an EAW to identify whether there would be significant environmental effects from the project and to allow for public comment and a hearing.[1]

The EAW incorrectly identifies wetland 6–11W as a Type–3 wetland consisting of 20 acres. Type–3 wetlands are defined as

"inland shallow fresh marshes in which soil is usually waterlogged early during a growing season and often covered with as much as six inches or more of water." Minn.Stat. § 103G.005, subd. 17b (3). The EAW summary states:

> The main issue considering wetland 6–11W and Big Stone County Ditch No. 2 is the impact of a repair of ditch 2 to original constructed depth and the current water level in 6–11W. Past records indicate that water depths in wetland 6–11W were adequate to maintain type 3 conditions with the ditch in a reasonable state of repair. Current data indicates that with the repair of Ditch No. 2 water depths may not support the same wetlands type.

It is undisputed that the project will transform wetland 6–11W from a Type–5 protected wetland to an unprotected Type–2 wetland, defined as

> [i]nland fresh meadows in which soil is usually without standing water during most of the growing season but is waterlogged within at least a few inches of the surface.

Minn.Stat. § 103G.005, subd. 17b(2).

Appellants received comments based on the flawed EAW, and a response to the comments from the county engineer. The Minnesota Board of Water and Soil Resources[2] commented that a replacement plan for the loss of wetlands would be required. The board noted that, pursuant to Minn. R. 8420.0210 (1999), a Technical Evaluation Panel (TEP) and local government unit would be responsible for determining if appellant is exempt from the

scoping process for an EIS. Minn. R. 4410.1000 (1999).

---

1. An EAW is a brief document prepared in worksheet format, designed to rapidly assess the environmental effects associated with a proposed project. The EAW serves primarily to aid in the determination of whether an EIS is needed and to serve as a basis for the

2. BWSR is a state agency that provides technical assistance and regulatory support to local authorities to administer wetland conservation laws.

replacement plan requirement. A TEP was convened and issued a report that stated that a "mitigation or replacement plan would certainly be needed if plans were made to lower the control point of Protected Waters Wetland 6–11W."

After a public hearing, appellants concluded that the cumulative potential effects of the project "would not be so significant as to warrant an EIS." Appellants assert that the project is exempt from the requirement of a wetland-replacement plan but have not sought an exemption from the local government unit.

Respondents brought this declaratory judgment action. The district court granted partial summary judgment declaring that appellants are required to obtain permission from the commissioner of the DNR to undertake this project because it substantially affects public waters, and that appellants are required to have a public waters work permit. After trial, the district court concluded that appellants are also required to have an approved wetland-replacement plan or exemption from the requirement by the appropriate government agency but are not required to have an EIS. Finding the EAW used by appellants fatally flawed, however, the district court enjoined work on the project pending preparation and review of an appropriate EAW and resolution of the replacement plan issue by the local government unit.[3] This appeal and notice of review followed.

## ISSUES

1. Did the district court err by granting summary judgment declaring that ap-

pellants are required to obtain the commissioner's permission for a ditch repair that will involve draining public waters, pursuant to Minn.Stat. § 103E.011 and a public waters work permit under Minn.Stat. § 103G.245?

2. Did the district court err by concluding that the county's project is exempt from the requirement of a mandatory EIS for projects that eliminate protected waters?

3. Did the district court err by concluding that appellants must obtain an approved wetland-replacement plan or an exemption from the local governmental unit pursuant to Minn. R. 8420.0210?

## ANALYSIS

### Standards of review

On appeal from summary judgment, we ask whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). On appeal from a declaratory judgment, appellate courts apply a clearly erroneous standard to the factual findings and review the district court's determinations of questions of law de novo. *Rice Lake Contracting Corp. v. Rust Env't & Infrastructure, Inc.*, 549 N.W.2d 96, 98–99 (Minn.App.1996), *review denied* (Minn. Aug. 20, 1996). Construction of statutes and rules is a matter of law, which this court reviews de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 393 (Minn.1998). Application of statutes and rules to the undisputed facts of a case involve ques-

---

**3.** Respondents requested "appropriate injunctive relief" in their initial complaint but did not address this issue at the district court level. The district court did not specifically address the need for injunctive relief. Addi-

tionally, the parties do not raise the issue of injunctive relief in their appeal to this court. Therefore, we do not reach the issue on whether injunctive relief was appropriate in this case.

tions of law. *See Boubelik v. Liberty State Bank*, 553 N.W.2d 393, 402 (Minn.1996).

### 1. DNR permission/permit requirement

■ Appellant argues that the district court erred by declaring that the project requires permission from the commissioner of the DNR pursuant to Minn.Stat. § 103E.011 (2000) and a public waters work permit pursuant to Minn.Stat. § 103G.245 (2000). Appellants assert that they are not required to have either permission or a permit. We disagree.

Minn.Stat. § 103E.011 defines the drainage authority's powers. Subdivisions two and three restrict a drainage authority's power with respect to work in public waters:

> A drainage authority may not drain a water body or begin work or activity regulated by the public water work permit requirement under chapter 103G.245 in a watercourse until the [DNR] determines that the water body or watercourse is not public waters. If a water body or watercourse is determined to be public waters, the drainage proceedings are subject to chapter 103G.215 relating to replacing public waters and the water bank program.

Minn.Stat. § 103E.011, subd. 2.

> The drainage authority must receive permission from the commissioner to: (1) remove, construct, or alter a dam affecting public waters; (2) establish, raise, or lower the level of public waters; or (3) drain any portion of public water.

Minn.Stat. § 103E.011, subd. 3(a). A public waters work permit is required to

> [c]hange or diminish the course, current, or cross section of public waters, entirely or partially, within the state, by any means, including * * * excavating * * *.

Minn.Stat. § 103G.245, subd. 1(2). But an exception to the public waters work-permit requirement arises when

> [w]ork in altered natural watercourses that are part of drainage systems established under chapter * * * 103E if the work in the waters is undertaken according to chapter * * * 103E.

Minn.Stat. § 103G.245, subd. 2(1).

Appellants' argument that the statutes, read together, relieve them of both the permission and the permit requirements is without merit. County Ditch 2 is part of an altered natural watercourse. Therefore, we agree that if the permission requirement of Minn.Stat. § 103E.011, subd. 3, is satisfied, the exemption from the public waters work permit requirement of Minn.Stat. § 103G.245, subd. 1(2) would apply. Under these circumstances the exemption would apply because the project would be part of a chapter 103E drainage system involving an altered natural watercourse and would have been undertaken according to chapter 103E. But appellants did not obtain the commissioner's permission for the project as required by § 103E.011, subd. 3, and therefore they are not proceeding according to chapter 103E and are not entitled to an exemption from the work permit required by Minn. Stat. § 103G.245. While we affirm the district court's determination that appellants are subject to both statutes, we reverse the district court's holding that both permission and a permit are required and hold that appellants must either have permission under chapter 103E or the work permit under chapter 103G to proceed with work that will drain, change, or diminish public waters in wetland 6–11W.

### 2. EIS requirement

■ The district court found that wetland 6–11W will be eliminated as a Type–5

wetland and will become an unprotected Type–2 wetland and recognized that an EIS is mandatory for "projects that will eliminate a protected water." Minn. R. 4410.4400, subp. 20 (1999). But the district court applied an exemption from the EIS requirement for "routine [ditch] maintenance or repair * * * performed within 20 years of * * * major repair." Minn. R. 4410.4600, subp. 17 (1999). Respondents argue that the district court misconstrued the exemption. We agree.

The district court failed to consider the portion of Minn. R. 4410.4600 that limits the scope of exemptions. *See* Minn. R. 4410.4600, subp. 1. "An EIS *must be prepared* for projects that meet or exceed the threshold of any subparts 2 to 24" of Minn. R. 4410.4600. *Id.* (emphasis added). The district court recognized that this project meets the threshold of Minn. R. 4410.4400, subp. 20, because it eliminates a protected water. The unambiguous language of Minn. R. 4410.4600, subp. 1, makes the exemption relied on by the court inapplicable and makes an EIS mandatory for this project. Because the district court's factual findings clearly establish that an EIS is required for this project, we reverse the district court's erroneous conclusion that an EIS is not required. Because an EIS is mandatory, a new EAW is not required, so we also reverse the district court's order that appellants prepare and disseminate another EAW.

### 3. Wetland replacement requirement

■ Public waters wetlands may not be drained unless "replaced by wetlands that will have equal or greater public value." Minn.Stat. § 103G.221 (2000). A replacement plan is not required for draining wetlands resulting from the repair or maintenance of an existing public drainage system such as County Ditch 2, unless the affected wetlands are types 3, 4, or 5 that have been in existence for more than 25 years. Minn.Stat. § 103G.2241, subd. 2(c) (2000). Wetland 6–11W is. a Type–5 wetland that has existed for more than 50 years and is therefore subject to the replacement-plan requirement.

Appellants argue that they are exempt from the replacement-plan requirement by Minn.Stat. § 103G.2241, subd. 3(1) (2000) which provides an exemption for activities that are also exempted from federal regulation under 33 U.S.C. § 1344(f). Appellants rely on *United States v. Sargent County Water Res. Dist.,* 876 F.Supp. 1090 (D.N.D.1994) (affirming an exemption from federal regulation under 33 U.S.C. § 1344(f) in a drainage case). As the district court correctly noted, the referenced exemption is for discharge of dredged or fill material into navigable waters "for the purpose of construction or maintenance of farm or stock ponds or irrigation ditches, or the maintenance of drainage ditches." 33 U.S.C. § 1344(f)(C) (1991). And this court recently held that *Sargent County Water Res. Dist.* does not create an exemption under § 103G.2241 for parties who drain wetlands. *Hentges v. Minn. Bd. of Water & Soil Res.,* 638 N.W.2d 441 (Minn.App. 2002) (holding that the federal law provides an exemption to the *discharge of materials* into navigable waters, including wetlands, due to the maintenance of ditches). Here, the regulated activity is the drainage of wetlands and not the discharge of dredged materials into the ditch. The district court correctly determined that § 103G.2241, subd. 3(1), does not mandate an exemption in this case.

The district court further concluded that an exemption from the replacement-plan requirement must be sought from the Big Stone Soil and Water conservation District, the appropriate local-government unit for this project. *See* Minn. R. 8420.0210 (stating that the local-government unit makes exemption determina-

tions and that the determinations must be based on the exemption standards); *see also* Minn. R. 8420.0240 (1999) (stating that if a decision requires a finding of wetland size or type, the local government unit should seek the advice of the technical panel). We agree. The district court did not err by concluding that the project requires either an approved replacement plan or exemption determination from the appropriate local government unit.

## DECISION

We affirm the district court's conclusion that the ditch repair proposed by appellants is subject to Minn.Stat. § 103E.110, subd. 3, and Minn.Stat. § 103G.245 governing work in public waters. But we reverse the portion of the district court's decision stating that both statutes must be satisfied and hold that if appellants obtain permission pursuant to chapter 103E.011, subd. 3, and otherwise proceed in accordance with chapter 103E, they are entitled to the exemption in Minn.Stat. § 103G.245, subd. 2(2), from the public waters work permit requirement of Minn.Stat. § 103G.245, subd. 1(2). We affirm the district court's conclusion that appellants are not, as a matter of law, exempt from wetland-replacement requirements, and must seek approval of a replacement plan or exemption from the requirement from the appropriate local government unit. We reverse the district court's determination that appellants must prepare another EAW and the determination that an EIS is not mandatory. We hold that for appellants to proceed with the repair in a manner that will drain wetland 6–11W, they must obtain the required DNR approval, complete the EIS process, and obtain a replacement plan approval or exemption.

**Affirmed in part and reversed in part.**