**Wayne PESTKA, et al., Appellants,**

v.

**COUNTY OF BLUE EARTH,**
**Respondent.**

No. C3–02–566.

Court of Appeals of Minnesota.

Dec. 17, 2002.

Charles K. Frundt, Frundt & Johnson, Blue Earth, MN, for appellants.

Ross Arneson, Blue Earth County Attorney, Mankato, MN; and Scott T. Anderson, Ratwik, Roszak & Maloney, P.A., Minneapolis, MN, for respondent.

Considered and decided by HUDSON, Presiding Judge, PETERSON, Judge, and G. BARRY ANDERSON, Judge.

## O P I N I O N

HUDSON, Judge.

This is the second appeal to this court arising from the petition for a drainage improvement to County Ditch # 86, Branch 1, in Blue Earth County. On appeal from summary judgment, appellants argue that the district court (a) erred in ruling that Minn.Stat. § 103E.511 (2002) gives the drainage authority the ability to approve a corrected report of the viewers; (b) should have ruled that Minn.Stat. §§ 103E.341 and 103E.505 (2002) preclude the drainage authority from awarding a contract for a drainage project unless it is known that the project's benefits exceed its cost; and (c) should have included in the cost of the project the amounts paid to avoid a challenge to the project by others. We affirm.

### FACTS

On September 23, 1997, the Blue Earth County Board of Commissioners (county board), acting as the drainage authority, approved a proposed drainage improvement to County Ditch # 86, Branch 1, in

Blue Earth County.[1] As required by statute, the county board found that the estimated benefits were greater than the total estimated costs, including damages. *See* Minn.Stat. § 103E.341 (2002).[2] At the time of the hearing, the viewers[3] determined the benefits to be $339,819 and the estimated costs of the improvement, including damages, to be $315,932, causing the estimated benefits to exceed the sum of the estimated damages and the costs by $23,886.

No appeal was taken from the order establishing the drainage improvement project. On October 28, 1997, however, appellants Wayne Pestka and Blaine Phillips (Pestka and Phillips), along with several other affected landowners, filed a benefits-and-damages appeal, contesting the amount of benefits and damages that would accrue to their lands under the drainage improvement project. At the January 11, 1999, jury trial of the consolidated appeals, the viewers indicated that they had misapplied a capitalization formula to arrive at the determination of benefits, and that their report to the county board had consequently understated the benefits that they believed accrued to the land. Nonetheless, the jury issued verdicts reducing the amount of benefits and increasing the amount of damages to most of the subject properties, resulting in the cost of the drainage improvement project exceeding the benefits.

In apparent anticipation that the viewers would file an amended report, on April 12, 1999, Pestka and Phillips filed a petition with the drainage authority for (1) nonapproval and denial of an amended viewers' report, on the basis that the viewers had made erroneous assumptions as to benefits and (2) dismissal of the proceedings on the basis that the costs, including damages, would exceed the benefits of the project. On April 30, 1999, the viewers did, in fact, file an amended viewers' report, reporting increased benefits to the affected land based on the adjustment to the capitalization factor. Benefits under the amended report were set at $324,168.

As a result of a posttrial settlement between the parties, the district court issued amended findings of fact, order, and judgment in the first benefits appeal, incorporating many of the verdict amounts and making minor modifications to the precise area of certain lands to be reclaimed. On May 25, 1999, the project engineers then filed a revised amended final report with some project engineering changes incorporating certain changes agreed to by the parties in the posttrial settlement. Two days later, the county received new bids for the project. The lowest bid came from Krengel Brothers Construction, Inc.

On June 7, 1999, another affected landowner, Merrill Hoppe (Hoppe), who had not joined in the original proceeding, petitioned the county board to refer the initial viewers' and engineer's reports back to the viewers and the engineer for amendment to conform to the reports. The petition stated that because of excessive litigation costs, it appeared that unless the viewers'

---

1. This culminated a process that began with a petition for the improvement of the ditch in September, 1995. This petition sought an improvement by running an additional underground tile line in order to carry the waters drained therein to Branch 1's outlet into the main ditch. The petition was later amended to include the running of an open ditch.

2. The statutory ditch law scheme as codified in 1990 remains the current governing law. We therefore cite to the 2002 Minnesota statutes in this opinion.

3. The viewers, three disinterested residents of the state qualified to assess benefits and damages, are appointed by the drainage authority. Minn.Stat. § 103E.305, subd. 1 (2002).

and engineer's reports were amended, the improvement project could not be constructed because the costs would be in excess of the reported benefits. On August 9, 1999, the county board found that with the corrections or modifications proposed in the petition, a contract could be awarded for construction of the project and ordered that the engineer and the viewers amend their initial reports to conform to Hoppe's petition. As amended, the reports were adopted; the benefits were determined to be $324,186, and the cost of construction plus damages found to be $313,577.

As a result of this order, Pestka and Phillips appealed a second time to the district court, challenging the benefits and damages determinations on lands affected by the order. Because their benefits had been determined in their first appeal, Pestka and Phillips' benefits were unchanged by this order. Included in the new appeal was land owned by Duane Truebenbach and other affected landowners. Pestka and Phillips also filed a complaint in district court requesting a temporary injunction and a declaratory judgment that the county board had exceeded its authority in approving the amended viewers' report, and that the sum of $12,000, which had been paid into the trust account of an attorney for the county in order to secure the promise of Duane Truebenbach not to appeal the benefits and damages determination, be considered additional costs of the project. While these actions were pending, the county board issued an order on October 19, 1999, awarding the construction contract to Krengel Brothers Construction, Inc.

The district court dismissed the second benefits-and-damages appeal as well as the declaratory judgment/injunction action, noting that it had become moot as a result of the dismissal of the benefits-and-damages appeal. Pestka and Phillips then appealed to this court, which concluded that they lacked standing to appeal because there was no "injury in fact" to them. *In re Improvement of County Ditch No. 86 v. Phillips*, 614 N.W.2d 756, 763 (Minn.App. 2000) (*Phillips I*). On appeal, the Minnesota Supreme Court reversed, holding that appellants, who would be directly affected by the proposed project, had standing pursuant to Minn.Stat. § 103E.091 to appeal the benefits and damages determinations, even when they were not appealing those determinations as to their own land. *In re Improvement of County Ditch No. 86 v. Phillips*, 625 N.W.2d 813, 814 (Minn.2001) (*Phillips II*). The supreme court also held that the appellants' declaratory judgment and injunctive actions could proceed. *Id.* at 821. During the pendency of this litigation, the drainage improvement was constructed. On February 27, 2001, the county board accepted the drainage project and approved final payment to the contractor.

On remand, the district court granted summary judgment for Pestka and Phillips as to the county board's jurisdictional challenge. On the other issues the district court granted summary judgment for the county board, holding that (a) the county board did not exceed its authority under Minn.Stat. § 103E.511 in accepting the amended viewers' report, (b) Minn.Stat. § 103E.505 granted the board authority to award a contract before a final determination of whether the benefits exceeded the cost of improvement, and (c) the payment of $12,000 to the attorney trust fund did not constitute an illegal gift to the drainage system. The court also declined to order injunctive relief, holding that the issue had become moot when the project was constructed. This appeal followed.

## ISSUES

I. Does Minn.Stat. § 103E.511 (2002) authorize a ditch authority to accept an

amended viewers' report in order to correct errors in the previous report?

II. Does a ditch authority have the authority, under Minn. Stat § 103E.505 (2002), to award a construction contract for drainage improvements when a benefits-and-damages appeal is pending?

III. Does a deposit in an attorney trust fund, held for an affected landowner in exchange for an agreement not to appeal benefits and damages, constitute an illegal gift to the drainage improvement project when it does not directly benefit the drainage authority?

## ANALYSIS

■ On appeal from summary judgment, this court asks whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). On an appeal in a declaratory judgment action, we apply a clearly erroneous standard of review to the findings of fact and review the district court's determinations of legal questions de novo. *Minn. Ctr. for Envtl. Advocacy v. Big Stone County Bd. of Comm'rs,* 638 N.W.2d 198, 202 (Minn.App. 2002), *review denied* (Minn. Mar. 27, 2002). Statutory construction is a matter of law, which this court reviews de novo. *Brookfield Trade Ctr. Inc. v. County of Ramsey,* 584 N.W.2d 390, 393 (Minn.1998).

### I

Minnesota laws concerning drainage ditches form a "complex matrix adopted with the intent of reclaiming agricultural land by disposing of excess water that renders the land untillable, and fairly allocating the costs among benefited landowners." *In re Improvement of Murray County Ditch No. 34,* 615 N.W.2d 40, 45 (Minn.2000) (citation omitted). Generally speaking, a drainage improvement is not intended to be of particular benefit to the general public; only the affected landowners use the ditch. Thus, drainage improvements are designed to be self-sustaining in that the benefits to individual landowners are required to be greater than the costs so that the entire project can be paid for by assessments to the landowners who receive the benefits. The amount of liability on a tract of land may not exceed the benefits determined for that tract. Minn.Stat. § 103E.601 (2002).

■ Because drainage proceedings are purely statutory, their validity depends on strict compliance with the relevant provisions of the drainage statutes. *In re Repair & Improvement of Judicial Ditch No. 9 v. County of Freeborn,* 386 N.W.2d 358, 360 (Minn.App.1986). Since these statutes form part of a complete statutory scheme, and since they relate to the same subject matter, they are in pari materia and should be construed together. *Wold v. Bankers Sur. Co.,* 133 Minn. 90, 92–93, 157 N.W. 998, 999 (1916).

Appellants Pestka and Phillips first challenge the county's authority, under Minn. Stat. § 103E.511 (2002), to accept the amended viewers' report. Minn.Stat. § 103E.511 provides a specific procedure for amending reports after the establishment of a drainage system. If certain conditions are met, the statute permits the drainage authority to authorize the engineers to amend the detailed survey report, and if the amended changes affect the amount of benefits or damages, the drainage authority is directed to refer the viewers' report back to the viewers to reexamine the benefits and damages. Minn.Stat. § 103E.511, subd. 5(e) (2002). According to Minn.Stat. § 103E.511, subd. 1(1) (2002), the procedure under this section

may be used if, after a drainage system is established:

(1) the only bids received are for more than 30 percent in excess of the engineer's estimated cost, or in excess of the benefits, less damages and other costs; * * *.

■ Here, Pestka and Phillips appealed the county board's initial benefits and damages determination as to their properties, and the matter was tried to a jury in January 1999. The jury verdict rendered increased the damages and decreased the benefits accruing to their properties. The jury verdict meant that, as to the Pestka and Phillips properties, the costs of constructing the drainage improvement, including damages, exceeded the benefits received by Pestka and Phillips. As a result, the amended engineering report recommended several engineering changes to the project, some reflecting the stipulated posttrial settlement concerning the benefits and damages to Pestka and Phillips' lands. In addition, the corresponding amended viewers' report recalculated the benefits, correcting the previous error in capitalizing the annual benefit; this resulted in increased benefits.

Pestka and Phillips argue that immediately following the jury verdict determining benefits and damages as to their own lands, when the proposed costs and damages were found to exceed the proposed benefits, the county board was obligated to dismiss the proceeding pursuant to Minn. Stat. § 103E.341 (2002). Under this section, the drainage authority must dismiss the proceedings if it determines that the benefits of the proposed drainage project are less than the total cost, including damages awarded. But modification of the original drainage proposal has historically been allowed throughout the legislative scheme for establishment of drainage ditches. *See In re Lateral 2–A of Judicial Ditch No. 36 v. Redwood County,* 290 Minn. 70, 74, 185 N.W.2d 701, 704 (1971)

(holding that modification of engineer's report to include additional lands in drainage system did not constitute so substantial a change as to invalidate drainage proceedings). Furthermore, the viewers, who are neutral fact-finders, unequivocally stated that they had made an error in their calculation and wished to submit a corrected report.

The county board argues that given that the drainage authority had accepted the viewers' initial report, it flies in the face of reason and rationality to suggest that the drainage authority, with a proper petition under Minn.Stat. § 103E.511 before it, had no power to accept the viewers' amended report as well. We agree, particularly since Minn.Stat. § 103E.511, subd. 5(f), specifically provides for an appeal of the amended viewers' report to be taken under the provisions of Minn.Stat. § 103E.091, subd. 1. It would not be logical for the statute to provide for appeal of an amended report if the drainage authority lacks the power to accept such a report. Consequently, we conclude that Minn.Stat. § 103E.511 gave the county authority to order an amended report, and we hold that the district court properly granted summary judgment in favor of the county board on this issue.

**II**

Pestka and Phillips next contend that the county lacked authority to award the construction contract for the drainage improvement project to Krengel Brothers Construction, Inc. during the pendency of their second benefits-and-damages appeal. Minn.Stat. § 103E.505, subd. 2 (2002) provides that a drainage authority may not award a construction contract for a drainage project during a pending benefits-and-damages appeal, *"unless the drainage authority orders the contract awarded."* (Emphasis added.) Pestka and Phillips

maintain that this section should be read together with Minn.Stat. § 103E.341 (2002) to allow the award of a construction contract only when the *finally determined* benefits exceed the *finally determined* costs of the project. *See* Minn.Stat. § 103E.341, subd. 1(1) (2002). But the plain language of Minn.Stat. § 103E.505, subd. 2 clearly reflects the intent of the legislature to allow a construction contract to be awarded during a benefits-and-damages appeal, if the drainage authority sees fit to do so. *See* Minn.Stat. § 645.16 (2002) (stating that "[w]hen the words of a law in their application to an existing situation are clear and free from ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing its spirit.")

In addition, Minn.Stat. § 103E.341, subd. 2(4) (2002), referring to establishment proceedings, states only that the drainage authority "shall" establish the proposed drainage project "if it determines that * * * the *estimated* benefits are greater than the total *estimated* cost, including damages." (Emphasis added.) The word "estimated" contemplates that damages, benefits, and costs may change at a later date. This language acts as an apparent acknowledgement of both the existence of Minn.Stat. § 103E.091 (benefits-and-damages appeals), and the review process under Minn.Stat. § 103E.095 (establishment appeals). Moreover, the word "shall" indicates that establishing the drainage project is mandatory if the criteria enumerated in Minn.Stat. § 103E.341, subd. 2 are met. *See* Minn.Stat. § 645.44, subd. 16 (2002) (stating " '[s]hall' is mandatory"). In other words, Minn.Stat. § 103E.341 simply identifies what the drainage authority must determine at the time of the final hearing, not at some later point in time. Thus, if the proposed benefits outweigh the proposed costs *at the time of establishment,* the drainage project must be established. Once a drainage project has been established, if the drainage authority sees fit, it may award a construction contract for the pending drainage project, even during a benefits-and-damages appeal.

Pestka and Phillips argue that until the benefits and damages are finally determined, there can be no valid establishment order, relying on *Hagen v. County of Martin,* 253 Minn. 367, 91 N.W.2d 657 (1958). In *Hagen,* the Minnesota Supreme Court held that where the benefits-and-damages appeals had finally determined that the damages exceeded the benefits of a drainage project, the drainage authority was compelled to dismiss the proceedings. *Id.* at 374, 91 N.W.2d at 662. But *Hagen* was decided in 1958, when the drainage code was restricted to a single appeals process for both establishment and benefits-and-damages appeals. *See* Minn.Stat. §§ 106.631, .021 (1957), *repealed by* 1985 Minn. Laws ch. 172, § 133. In 1985, the legislature reorganized the drainage statutes, and for the first time, established separate appeals processes for establishment and benefits-and-damages appeals. *See* Minn.Stat. §§ 106A.091, .095 (Supp. 1985).

■ We acknowledge that in 1985, and again in 1990 when the statutes were recodified under chapter 103E, the legislature indicated that the recodification was not intended to alter the drainage law. *See* 1985 Minn. Laws ch. 172, § 132; 1990 Minn. Laws ch. 391, art. 10, § 1. But the current statutory framework has made explicit the distinctions between a benefits-and-damages appeal and an establishment appeal. *See* Minn.Stat. §§ 103E.091, .095 (2002). An affected party may appeal the initial establishment order pursuant to Minn.Stat. § 103E.095; such an appeal must be taken within 30 days after the order is filed, and the matter is tried to

the court. Minn.Stat. § 103E.095, subds. 1, 2. An appeal under this section challenges whether the drainage project goes forward; therefore, no construction contracts may be awarded while an establishment appeal is underway. Once a drainage project is established, however, a landowner may still appeal the benefits and damages in a separate proceeding under Minn.Stat. § 103E.091. In a benefits-and-damages appeal, the affected party has a right to trial by jury for a possible redetermination of benefits and damages. Minn.Stat. § 103E.091, subds. 2, 4. Such an appeal does not challenge the establishment of the drainage system, the validity of the drainage system, or whether the drainage project should go forward. It merely challenges the determination of costs, damages, and benefits.

Minn.Stat. § 103E.095, subd. 3, clarifies the interaction of the two kinds of appeals. According to that statute, if an establishment order is appealed, the trial of a benefits-and-damages appeal must be stayed until the establishment appeal is resolved. Minn.Stat. § 103E.095, subd. 3. If the establishment order is affirmed, the benefits-and-damages appeal must then be tried. *Id.* Thus, the statutory scheme contemplates the resolution of the establishment question *before* a benefits and damages appeal is resolved.

This view is in harmony with caselaw decided under previous versions of the drainage statutes, which differentiated between issues of establishment and benefits and damages. *See Titrud v. Achterkirch,* 298 Minn. 68, 71–72, 213 N.W.2d 408, 411 (1973) (upholding establishment order, but holding that issue of benefits and damages could not be raised for first time on appeal, absent jury determination on that issue); *State ex rel. Great Northern Ry. v. Dist. Court of Sixteenth Judicial Dist.,* 227 Minn. 482, 487, 36 N.W.2d 336, 339 (1949)

(upholding establishment order, noting that errors in individual assessments could be corrected on appeal from those assessments). In *Titrud,* an establishment appeal, the Minnesota Supreme Court determined that assertions that costs had been underestimated in the drainage authority's order establishing the ditch were not properly before the court. *Titrud,* 298 Minn. at 72, 213 N.W.2d at 411. The court noted that such a challenge could be raised only on additional hearings before the drainage authority. *Id.*

We have also considered the interaction of Minn. Stats. §§ 103E.091 and 103E.095 in interpreting the appealability of orders under Chapter 103E. *See generally In re Establishment of County Ditch No. 11,* 511 N.W.2d 54, 56 (Minn.App.1994) (holding that appeals of final district court orders and judgments issued pursuant to Minn. Stat. § 103E.091 were governed by Minn. Stat. § 103E.095 as to time limits on appealability), *review denied* (Minn. Mar. 31, 1994). Therefore, construing the provisions of Minn.Stat. §§ 103E.091 and 103E.095, subd. 3, together with Minn. Stat. § 103E.505, we conclude that once the initial establishment order was entered, the county had full authority, despite the pending benefits-and-damages appeal, to award the construction contract for the drainage improvement.

We additionally take notice of the current benefits-and-damages appeal that has been allowed to proceed by order of the supreme court. According to Minn.Stat. § 103E.601, subd. 1 (2000), the amount of liability on a tract of property may not exceed the benefits accruing to that tract in the proceedings. The legislature has provided this safeguard so that each affected landowner need not pay more than the fair share of costs allocated to his or her land. Therefore, if the appeal of benefits and damages determinations proceeds,

it is presumed that the drainage authority would be responsible for the costs, if any, exceeding the benefits finally determined as to a given tract of land.

### III

Pestka and Phillips additionally argue that a $12,000 payment to the trust account of an attorney for the county, made to secure a promise of a landowner not to appeal his benefits and damages determination, constituted an illegal gift to the drainage improvement project. In other words, Pestka and Phillips argue that the $12,000 should be charged as costs to the drainage improvement project. In *Hagen*, the Minnesota Supreme Court held that objecting property owners could appeal a drainage authority order accepting a gift of $4,200 on behalf of the drainage improvement when, after accepting the gift, the benefits exceeded the damages, thus permitting the drainage authority to order the improvement built. *Hagen*, 253 Minn. at 370, 373, 91 N.W.2d at 659, 661–62. In this case, the evidence shows an agreement made between several affected landowners, providing that one landowner would be paid the sum of $12,000 if and when the petition for the ditch improvement was finally approved, and all litigation had concluded. The sum was to be held in escrow in the trust account of an attorney representing the county board. In contrast to the situation in *Hagen*, however, here the county board itself was to receive no funds under the proposed arrangement, and there is no evidence that the affected landowner's failure to appeal would "tip the balance" to allow the improvement to proceed. We therefore decline to hold that this proposal, without more, constituted an illegal gift to the drainage improvement project.

### DECISION

Under Minn.Stat. § 103E.511 (2002), a drainage authority may accept an amended viewers' report after the establishment of a drainage improvement pursuant to Minn. Stat. § 103E.091 (2002), when the viewers have made an error in reporting benefits to the affected lands. Minn.Stat. § 103E.505, subd. 2 (2002) allows a drainage authority to award a construction contract during the pendency of a benefits-and-damages appeal, after the improvement has been established. Finally, a proposed payment to one affected landowner by other affected landowners does not constitute an illegal gift to the drainage improvement project, when the drainage authority itself would receive no funds, and the record fails to establish that such a payment would have determined whether the improvement could proceed. The district court properly granted summary judgment in favor of the county board.

**Affirmed.**