*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0619**

Sharon Hobbs,
Relator,

vs.

The Polishing Touch, Inc.,
Respondent,
Department of Employment and Economic Development,
Respondent.

**Filed December 27, 2016
Affirmed
Stauber, Judge**

Department of Employment and Economic Development
File No. 34303717-2

Sharon Hobbs, Lakeville, Minnesota (pro se relator)

The Polishing Touch, Inc., Burnsville, Minnesota (respondent employer)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent Department)

Considered and decided by Stauber, Presiding Judge; Worke, Judge; and Bratvold, Judge.

UNPUBLISHED OPINION

**STAUBER**, Judge

Relator challenges an unemployment-law judge's (ULJ) decision that she is ineligible to receive unemployment-compensation benefits because she was dismissed from her job for misconduct. We affirm.

**FACTS**

Pro se relator Sharon Hobbs worked for respondent housecleaning service, The Polishing Touch, Inc., from August 16, 2013, until her dismissal on January 4, 2016. Rebecca Ann Hardwick is the owner of The Polishing Touch, Inc. At the end of her employment, Hobbs was a cleaning crew leader and worked 35 hours per week. Following Hobbs's dismissal, she applied for unemployment-compensation benefits, and respondent Minnesota Department of Employment and Economic Development (DEED) issued an initial determination of eligibility. The Polishing Touch, Inc. appealed, and the ULJ held an evidentiary hearing before concluding that Hobbs was ineligible to receive benefits because she was dismissed from her job for misconduct.

During the evidentiary hearing, Hardwick testified that she kept a log of incidents of Hobbs's poor performance as they were reported by clients or discovered during the company's quality-control checks. The log was received into evidence, and Hardwick referred to the log during her testimony. Hardwick listed occasions on which Hobbs failed to dust properly, left homes in a messy condition, left floors "dirty and hairy," failed to properly wash windows, spent insufficient time at homes when clients were promised a specific number of cleaning hours, did not clean a "filthy" stove top, left a

2

client's door unlocked, left a list containing home-entry codes at a client's home, and other incidents.

After discovering that Hobbs's work performance was deficient, Hardwick testified that she reminded Hobbs to do a good job, asked her several times to slow down, required her to use a different dusting method, and warned her on several occasions that if her performance did not improve, she might lose her job. Because of Hobbs, the company lost a client, received numerous complaints, had to redo jobs or refund clients' payments, lost an employee because Hobbs rushed her, and, toward the end of Hobbs's employment, needed to routinely perform quality-control checks of her work. On cross-examination, Hardwick admitted that "[s]ome clients loved" Hobbs.

During her testimony, Hobbs testified that she spent a sufficient amount of time at each client's home and that the overall quality of her work was good. She admitted that she was warned that she might lose her job, but she argued that she generally "went over and above" in her work.

Following the hearing, the ULJ made individual findings on Hobbs's unsatisfactory performance to support its determination that she was ineligible to receive unemployment benefits. With regard to Hardwick and Hobbs's contradictory testimony about Hobbs's work performance, the ULJ found that Hardwick's

> testimony about what occurred was more credible than
> Hobbs's testimony because Hardwick relied on business
> records that were created contemporaneously with the events
> and were created as business records in the normal course of
> business. Hardwick's testimony was detailed and logical. It is
> more credible, and therefore more probable that the events

3

detailed in the findings of fact occurred as described by Hardwick.

The ULJ affirmed on reconsideration, and this certiorari appeal followed.

## D E C I S I O N

Upon judicial review of a ULJ's decision, this court may affirm, remand for further proceedings, or reverse or modify the decision if the relator's substantial rights were prejudiced because the conclusion, decision, findings, or inferences are, among other reasons, unsupported by substantial evidence in the record. Minn.Stat. § 268.105, subd. 7(d)(5) (2014). Substantial evidence is "(1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (2) more than a scintilla of evidence; (3) more than some evidence; (4) more than any evidence; or (5) the evidence considered in its entirety." *Minn. Ctr. for Envtl. Advocacy v. Minn. Pollution Control Agency*, 644 N.W.2d 457, 466 (Minn. 2002). This court reviews factual findings in the light most favorable to the decision and defers to the ULJ's credibility determinations. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006).

Hobbs argues that she should be eligible for unemployment benefits because she "did the job well," "the company was a hostile environment," and she was not warned about her performance issues before her dismissal. Hobbs did not raise the issue of whether her work environment was hostile in the administrative proceedings, and this court will not consider an issue that is raised for the first time on appeal. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (stating that generally an appellate court will not consider matters not argued to or considered by the district court); *see also Hentges v.*

4

*Minn. Bd. of Water & Soil Res.*, 638 N.W.2d 441, 448 (Minn. App. 2002) (applying *Thiele* principles to an administrative appeal), *review denied* (Minn. Mar. 27, 2002). Moreover, Hobbs admitted during the evidentiary hearing that she was warned that her poor performance could lead to her dismissal. At one point, she testified that she was warned by Hardwick "three times in one day" that she could be dismissed if her performance did not improve.

The ULJ's decision was also supported by the credibility determinations made by the ULJ. "When the credibility of a witness testifying in a hearing has a significant effect on the outcome of a decision, the [ULJ] must set out the reason for crediting or discrediting that testimony." Minn. Stat. § 268.105, subd. 1a(a) (2016). The ULJ fully credited Bradwick's testimony because it was "detailed and logical," and relied on records that were prepared in the regular course of business and contemporaneously with the instances of Hobbs's poor performance. The ULJ's credibility determinations are supported by substantial evidence and meet the statutory standard of proof. *See Ywswf v. Teleplan Wireless Servs., Inc.*, 726 N.W.2d 525, 531-32 (Minn. App. 2007) (noting that a credibility determination requires more than a mere recitation of the parties' testimony); Minn.Stat. § 268.105, subd. 1(b) (2014) (stating that "facts will be determined based on a preponderance of the evidence"). Giving deference to these credibility determinations, we affirm the ULJ's decision that Hobbs was dismissed for misconduct within the meaning of the unemployment statute.

**Affirmed**.